## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TERRY V. FOBBS

    *Plaintiff*,

*v.*                                              CASE NO. 13-cv-11288

COMMISSIONER OF                    DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,                      MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 11) be **GRANTED**, that Defendant's Motion for Summary Judgment (Doc. 14) be **DENIED**, and the decision of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 11, 14, 15.)

Plaintiff filed applications for a period of disability and DIB and SSI with a protective filing date of July 20, 2010, alleging that he became disabled on December 1, 2007. (Transcript, Doc. 141-43, 144-50.) The claims were denied at the initial administrative stages. (Tr. 65-72, 73-80.)

On December 12, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the application for benefits *de novo*. (Tr. 26.) In a decision dated February 2, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 1, 2007, through the date of the ALJ's decision. (Tr. 22.) Plaintiff requested Appeals Council review of this decision. (Tr. 9.)

The ALJ's decision became the final decision of the Commissioner on February 20, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On March 22, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc.*

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by

3

a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB and SSI is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

4

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

## D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements at all times through the date of the February 2, 2012 decision, and had not engaged in substantial gainful activity since December 1, 2007. (Tr. 15.) At step two, the ALJ found that Plaintiff's "degenerative joint disease in knees and ankles, particularly on the right," gout, and atypical chest pain status post one occurrence of supraventricular tachycardia were "severe" within the meaning of the second sequential step. (Tr. 15.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 16-17.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform a full range of sedentary[3] work as defined in the

---

[3]

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or

5

regulations. (Tr. 17.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a dispatcher and therefore he was not suffering from a disability under the Social Security Act. (Tr. 22.)

### E.    Administrative Record

Plaintiff was 59 years old at the time of his application and 60 years old at the time of the hearing. (Tr. 29.) Plaintiff lives in a first floor apartment with his son. (*Id.*) Plaintiff has a tenth grade education and can read and write in English. (Tr. 30.) Plaintiff testified that he worked for a towing company doing dispatch, and was predominately seated in that job. (Tr. 32-33.) Plaintiff's last job was working in maintenance at a sporting arena and that job ended when he broke his ankle. (Tr. 33.)

Plaintiff described breaking his right ankle and agreed that it eventually healed properly. (Tr. 34.) Plaintiff testified that the problems that keep him from working include water in his right knee, which causes pain, swelling, stiffness, a popping sound and sometimes the knee "goes out. (Tr. 34-35.) He testified that he used to take pain medication, but now he does not have the money to fill the prescription. (Tr. 35-36.) Plaintiff's medications at the time of the hearing were Ultram, hydrochlorothiazide and aspirin. (Tr. 37.)

Plaintiff also testified that he has gout in his right big toe and he has symptoms about twice a month, lasting three days each time. (Tr. 38.) Upon questioning, Plaintiff testified that one of the doctors at the emergency room told him he has gout and they prescribed some green pills for him to take once or twice a day. (Tr. 39.) Plaintiff testified that during the month or so that he took the

---

carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

6

medication he did not have any gout-related flare-ups. (Tr. 40.) Plaintiff described pain in the middle of his chest that occurs at least three times a week lasting half hour to 40 minutes, which also keeps him from working. (Tr. 40-41.) Plaintiff testified that this chest pain has been going on for about 10 years. (Tr. 44.) His only treatment has been to take nitroglycerin pills. (*Id.*)

Plaintiff testified and reported that he is able to take care of his own personal needs, including getting dressed, bathing, feeding himself, and shaving. (Tr. 44-45, 191-92.) He testified that he does the housework when he can, but his son does the laundry because it is in the basement and his legs get weak when he tries coming up the stairs, especially when carrying something. (Tr. 45.) Plaintiff reported that he watches his grandson while his son is at work and Plaintiff is able to vacuum the living room and put dishes into the dishwasher. (Tr. 191-92.)

Plaintiff testified that he used to work on cars as a hobby, but he cannot do it anymore. (Tr. 45.) He testified that he had been using a cane for about a year and a half and that a doctor gave it to him at the hospital. (Tr. 46.) He also testified that he can walk one block before he has to stop and rest, he can stand at least 10 minutes before needing to sit and he can sit about one-half hour. (*Id.*) Plaintiff stood up at the hearing and explained that it was because his kneecap bothered him. (*Id.*) He said that he cannot get down on his knees, if he stoops down or squats he needs help getting up, when he is standing he cannot bend forward to touch his toes, but he can touch his knee. (Tr. 46-47.) He testified that he can lift and carry about 20 pounds. (Tr. 47.) He said he lies down about two to three times per day for about an hour or two for pain relief of the kneecap. (*Id.*) The pain eases when he lies down yet it sometimes wakes him when he tries to sleep. (Tr. 35.) Upon questioning by his attorney, Plaintiff testified that in school he was in a special education curriculum and he does not know how to use a computer. (Tr. 48.)

7

The transcript contains medical records from August 2009 through January 2012. Hospital records predominately show complaints of chest pain and right leg pain. For example, in August 2009, Plaintiff reported to the emergency room with complaints of coughing and chest pain occurring while Plaintiff was playing with his grandchildren. (Tr. 210.) Plaintiff's discharge diagnoses were chronic obstructive pulmonary disease exacerbation, tracheal bronchitis, nicotine addiction, alcohol abuse, history of hypertension, history of hyperlipidemia and atypical chest pain. A myoview stress test showed "no evidence of irreversible ischemia and the ejection fraction was around 57%." (210, 223.) Plaintiff was advised to "quit smoking and also slow down the drinking." (Tr. 211.)

In November 2010 Plaintiff was brought to the emergency room after calling 911. He complained that his heart was racing and he became dizzy. (Tr. 237.) An x-ray revealed no evidence of acute cardiopulmonary process. (Tr. 239.) Plaintiff was "educated on smoking and alcohol cessation. He was strongly encouraged to follow up with cardiology as an outpatient as he does have a prior history of arrhythmia without follow up." (Tr. 238.) He was prescribed Coreg and encouraged to take baby aspirin once daily. (*Id.*) His discharge diagnosis was supraventricular tachycardia. (Tr. 245.)

In July 2011, Plaintiff presented with chest pain. (Tr. 253.) He was prescribed daily aspirin and nitroglycerin as needed and discontinued Coreg. (*Id.*) In October 2011, Plaintiff presented to the emergency department with complaints of a dull, aching, non-radiating, non-throbbing right knee pain. (Tr. 256.) An x-ray of the right knee showed "no acute fracture, dislocation or osseous abnormality" and no soft tissue abnormality. (Tr. 258.) Plaintiff's discharge diagnosis was "chronic right knee effusion, etiology unknown." (Tr. 257.) In December 2011, Plaintiff again presented with chest pain. A diagnostic coronary angiogram revealed normal coronaries. (Tr. 261.)

8

Plaintiff was again advised to quit smoking. (*Id.*) Chest x-rays revealed no acute cardiopulmonary process. (Tr. 262.)

At the hearing, the vocational expert ("VE") testified that Plaintiff's work in a maintenance job was medium and unskilled, his temp jobs were primarily light to medium and unskilled, and his dispatcher job was sedentary and entry level semi-skilled. (Tr. 48.) The ALJ asked the VE to consider Plaintiff as a gentleman closely approaching retirement age, with the education background and work experience as reflected in the file and asked the VE to further assume "that his description of limitations is accurate, is an accurate reflection of how well he's able to function on a sustained basis during the course of a typical workday." (Tr. 48-49.) The VE testified that Plaintiff would not be able to perform any of his past relevant jobs or any work that exists in the State of Michigan or metropolitan Detroit area. (Tr. 49.) The VE attributed this to "too many disruptions in sustaining a workday. Lying down two to three times a day for up to one, maybe two hours at a time, it's just not possible to work on a full-time basis." (*Id.*)

The ALJ then asked the VE to assume an individual of Plaintiff's age, education and past relevant work who:

> [R]etains the residual functional capacity to sit six of eight hours of an eight-hour workday, stand and/or walk two of eight hours of an eight-hour workday, lift as much as 10 pounds only occasionally, less weight somewhat more frequently. . . . Clearly, activities requiring prolonged or protracted walking, climbing, doing stooping, squatting, kneeling, and crouching would all be contraindicated." (Tr. 49-50.)

The VE testified that such an individual could perform the dispatching job but not Plaintiff's other past jobs. (Tr. 51.) Plaintiff's attorney asked the VE whether one would need to use a computer in the dispatching job. (*Id.*) The VE responded, "Not in those days, no. But they may probably today, I think, as it's been changed. Everything, for it to be subject to communication, is in one way or the other followed with a computer system or a GPS system of some sort." (*Id.*) Upon

9

further questioning the VE testified that the dispatcher job required the ability to sit "[a]bout eight hours a day, six to eight hours a day." (Tr. 52.) Plaintiff's attorney asked if the job allows for a sit/stand option. (*Id.*) The VE testified that one can perform it "standing or seated" but would be "doing some postural changes in terms of bending, flexing forward, etc., because now you're above the workstation" and it is feasible or possible with a headset. (*Id.*) Plaintiff's attorney continued to question the VE regarding the job as it is performed today and how it was performed when Plaintiff's performed it. The details of this exchange will be set forth in more detail below where they are relevant to the analysis. (Tr. 52-55.)

### F.    Analysis

Plaintiff makes three arguments. First, Plaintiff argues that the ALJ erred in finding that he could perform his past relevant work as a dispatcher. Second, Plaintiff argues that the ALJ selectively relied on the findings in the Disability Determination Reports. Finally, Plaintiff argues that the ALJ failed to address the issue of transferable skills. I will start with the last argument first, as it gives context to the other arguments.

### 1.    Whether the ALJ Erred in Failing to Question the VE about Plaintiff's Transferable Skills

Plaintiff was 60 years old at the time of the hearing, which is considered a "person of advanced age" who is "closely approaching retirement age" pursuant to the Regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). Plaintiff relies on 20 C.F.R. section 404.1563 to argue that the ALJ did not properly elicit evidence from the VE about Plaintiff's transferable skills. 20 C.F.R. section 404.1563(e) provides:

> We consider that at advanced aged (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). See § 404.1568(d)(4). 20 C.F.R. §§ 404.1563(e), 416.963(e).

10

Section 404.1563(e) references section 404.1568(d)(4), which provides as follows:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semi-skilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. . . . 20 C.F.R. 404.1568(d)(4), 416.968(d)(4).

Defendant correctly points out that the transferability of skills issue was not reached in the ALJ's decision because the ALJ found at step four that Plaintiff is able to perform his past work.

20 C.F.R. section 404.1560(b)(3) provides:

> If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

This is consistent with Social Security Ruling 82-41, which provides that

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled. SSR 82-41.

Transferability of skills for individuals of different age categories comes into consideration at step five when determining whether there is other work in the economy which such an individual may perform. The regulations provide that "[w]hen we make a finding about your ability to do *other work* under 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section." 20 C.F.R. §§ 404.1563(b), 416.963(b)(emphasis added). The ALJ did

11

not err in failing to ask the VE about the transferability of Plaintiff's skills. It was not relevant to the determination at step four that Plaintiff could perform his past work as a dispatcher.

    **2.**    **Whether the ALJ's Decision That Plaintiff Can Perform His Past Relevant Work As a Dispatcher is Supported By Substantial Evidence**

The ALJ determined at step four of the sequential analysis that Plaintiff can perform his past relevant work as a dispatcher. The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. §§ 404.1560(b), 416.960(b).   20 C.F.R. sections 404.1520(f) and 416.920(f) provide

> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. See paragraph (h) of this section and § 404.1560(b) [and § 416.960(b)]. If you can still do this kind of work, we will find that you are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

"'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

Past relevant work is defined as work that "was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). There is no challenge to the classification of Plaintiff's work as a dispatcher as "past relevant work." Plaintiff challenges the finding that he can still perform that work, both as he performed it in the past and as it is performed today.

In making a determination that Plaintiff can perform his past relevant work, the ALJ may rely on "either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy." SSR 82-62; *see also* SSR 82-61. Social Security Ruling 82-61 states that

> A properly completed SSA-3369- F6, Vocational Report, may be sufficient to furnish information about past work. There may be cases involving significant variations between a claimant's description and the description shown in the DOT. In some instances, an apparent variation may result from an incomplete or inaccurate description of past work. Employer contact or further contact with the claimant, may be necessary to resolve such a conflict. Also composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT [Dictionary of Occupational Titles]. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert. SSR 82-61.

In the instant case, the ALJ questioned Plaintiff about the demands of his past job as a dispatcher for a towing company. (Tr. 32-33.) Plaintiff testified that when he was doing his job as a dispatcher, he had to "[j]ust sit there and answer the phone" and used walkie talkies to send people to the right place. (Tr. 33.)  This is consistent with the Work History Report (SSA-Form 3369-BK) on which Plaintiff reported that he "dispatched tow trucks", sat for eight hours a day, used machines tools and equipment, had writing duties such as completing reports, yet did not use technical skills or knowledge.  (Tr. 182-89, 186.) He reported that the heaviest weight lifted was 20 pounds and the weight he frequently lifted was ten pounds. (Tr. 186.) This was clarified at the hearing, when Plaintiff testified that at times he had to lift tires just to "get them out of the way," but that in the actual dispatching job he did not have to do any lifting. (Tr. 33.) The VE testified that Plaintiff's dispatcher job was sedentary in exertion and semi-skilled. (Tr. 48.)  In response to

questioning from Plaintiff's attorney, the VE testified as to how Plaintiff's dispatcher job would have been performed by him in 1998 or 1999. (Tr. 53.)

The ALJ made a finding that Plaintiff can perform his past relevant work as he actually performed it. (Tr. 22.) The ALJ's decision does not clearly indicate findings as to the physical demands of Plaintiff's past work as he performed it. The ALJ cites the VE's testimony that Plaintiff's past work in maintenance was unskilled and medium, as a dispatcher was semi-skilled and sedentary, and the various temp jobs were unskilled ranging from light to medium. (Tr. 22, 48.) The decision does not state whether the findings pertain to the jobs as generally performed or the jobs as Plaintiff performed them. (Tr. 22.) Even if it is assumed that they relate to the jobs as performed, there exists an inconsistency between the dispatcher job as Plaintiff reported and testified that he performed it, and the sedentary exertional level as testified to by the VE and in the RFC findings. Plaintiff testified that he lifted and moved tires in the dispatcher job and he reported that the heaviest weight he lifted was twenty pounds. These weights exceed the sedentary exertional level set forth in the RFC and as the dispatcher job is generally performed. The ALJ gave no explanation as to how this inconsistency was resolved. *See Whitfield v. Comm'r of Soc. Sec.*, 2014 WL 1329362 at *8 (W.D.Mich. March 28, 2014)("Despite the conflict between plaintiff's work history report and the VE's testimony, the ALJ did not make an explicit finding regarding the amount of standing involved in plaintiff's past work as a machine operator, either as plaintiff performed it or as it is performed in the national economy."). The requirements of Plaintiff's past work as performed are critical where the ALJ has concluded that Plaintiff is not disabled at step four because Plaintiff can perform this work as he performed it in the past. *See id.* The ALJ failed to explain in his decision why Plaintiff can perform his past relevant work as actually performed and therefore this finding is not supported by substantial evidence. *See O'Neal*

14

*v. Comm'r of Soc. Sec.*, 2013 WL 620377 at *7 (S.D.Ohio Feb. 19, 2013)(citing *Studaway v. Sec'y of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987)).  I therefore suggest that remand is necessary.

Because the ALJ will explain this determination on remand, and obtain evidence as needed, Plaintiff's additional related arguments must be addressed. Plaintiff also argues that he cannot be found to perform the dispatcher job as it is generally performed because he alleges that he is "computer illiterate." (Doc. 11 at 11, Tr. 48.) The Regulations specifically provide that the inability to obtain work, including for reasons of "[t]echnological changes in the industry in which you have worked," is not a basis for disability. *See* 20 C.F.R. §§ 404.1566(c)(4), 416.966(c)(4); *see also Ray v. Bowen*, 813 F.2d 914, 917 (9th Cir. 1987); *Wallschlaeger v. Schweiker*, 705 F.2d 191, 196 (7th Cir. 1983)(atrophy of skills does not prevent performance of past work for disability purposes). Other than Plaintiff's attorney's assertion and Plaintiff's testimony that he does not know how to use a computer, the record does not support a limitation that would prevent Plaintiff from using the new technology in the dispatcher job as generally performed.[4] (Tr. 48.)

In the context of his argument about the ALJ's findings at step four, Plaintiff also generally alleges that the RFC is not supported by substantial evidence "as it is inconsistent with the objective medical findings of Plaintiff's treating physicians as well as said doctor's opinions regarding Plaintiff's abilities." (Doc. 11 at 11.) Defendant correctly points out that Plaintiff has not identified any "treating" physicians whose opinions are inconsistent with the RFC and Plaintiff would have waived this issue, had there been any treating physician opinions in the record. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

---

[4]Plaintiff also testified that he was in special education classes in school. (Tr. 48.) This is not supported elsewhere in the record and to the extent it may be true, Plaintiff has worked at substantial gainful activity levels and otherwise functioned independently since that time. Inconsistent with this testimony is a disability report on which it is noted that Plaintiff completed the 10th grade and did not attend special education classes. (Tr. 178.)

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Plaintiff's remaining argument relies in part on a mistaken premise. Plaintiff states that the "ALJ found that Plaintiff can perform sit/stand option sedentary work." (Doc. 11 at 9.) Plaintiff additionally makes a statement in his brief that "[i]t would be impossible for Plaintiff (sic) perform a job with a sit stand option as he cannot write as he needs to use his cane." (Doc. 11 at 11.) Plaintiff bases his argument in part on the VE testimony that the dispatcher job when Plaintiff performed it would have used an old-fashioned telephone with a cord and not a headset and "if you had the phone in one hand and a cane in the other you cannot make notes." (Tr. 55.)  Although Plaintiff's attorney inquired of the VE about a sit/stand option, in fact the ALJ found Plaintiff could perform "the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 17, 52.) The ALJ did not find that Plaintiff requires a sit/stand option, the RFC does not include a sit/stand option, and Plaintiff in his brief does not support the argument that he needs a sit/stand option. Plaintiff does, however, make an argument that a cane is a medical necessity which is not accounted for in the RFC and he relies on the opinions of the consultative medical examiners as evidence. (Doc. 11 at 10.)

The record contains the medical opinions of one state agency medical consultant, Muhammad Ahmed, M.D., dated November 17, 2010, and two consultative medical examiners: Habib G. Gennaoui, M.D., dated October 20, 2010, and Moises Alviar, M.D., dated January 4, 2012. (Tr. 69-70, 77-78, 229-34, 263-78.) Each of these doctors has opined that Plaintiff needs an assistive device (a cane) for walking.

At the October 20, 2010 examination, Dr. Gennaoui completed a form on which he indicated that clinical evidence supports the need for a walking aid and selected the following reasons: "Reduce Pain" and "Needed; Would Fall Without Aid; Clinically Req'd." (Tr. 232.) Not having examined Plaintiff, Dr. Ahmed had the benefit of Dr. Gennaoui's examination report in giving his own opinion. Dr. Ahmed concluded that Plaintiff's could lift and/or carry ten pounds frequently, stand and/or walk two hours and sit about six hours in an eight-hour workday and that "claimant needs AD for even short distance for pain/balance/uneven terrain etc." (Tr. 69-70, 77-78.) At a January 4, 2012 examination, Dr. Alviar also completed a form on which he indicated that clinical evidence supported the need for a walking aid and selected the same reasons as Dr. Gennaoui: "Reduce Pain" and "Needed; Would Fall Without Aid; Clinically Req'd." (Tr. 270.)

Despite three physician's opinions that Plaintiff needs a cane for ambulation, the ALJ concluded that Plaintiff did not require a cane for ambulation and did not include this limitation in the RFC. (Tr. 17.) The ALJ's decision shows that he did not undertake consideration of these consultative medical examiners' opinions lightly. He gave detailed reasons for discounting these opinions and included multiple citations to the record to support his finding that Plaintiff did not require a cane limitation in the RFC.

It must be noted that none of these opinions came from a treating physician. It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. sections 404.1527(c)(2) and 416.927(c)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. However, dispositive administrative findings relating to the determination of a

disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations require the ALJ to consider certain factors in deciding the weight to give an opinion, including whether it is an examining or treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, the specialization of the opining source, and any other factors "which tend to support or contradict the opinion."  20 C.F.R. §§ 404.1527(c), 416.937(c). The ALJ explained in detail his reasons for discounting the examining consultants' opinions including Plaintiff's need for a cane.

First, he pointed out that it appears that they did not review the medical records and based their assessments entirely on Plaintiff's subjective complaints. (Tr. 19-20.) The ALJ in his decision specifically pointed out that "there is absolutely no indication anywhere in the medical records that a cane was ever prescribed or deemed medically necessary by the claimant's treating doctors at Sinai Grace or Providence Hospitals." (Tr. 20.) The ALJ pointed out that despite Plaintiff's allegation that the cane was prescribed at a hospital sometime in 2009, this is "completely uncorroborated in the medical evidence" and there is "absolutely no proof that a cane was ever prescribed or deemed medically necessary." (Tr. 20.)

The ALJ also explained that these two physical examination findings "are contradictory to every physical examination performed during all of the claimant's hospital visits, which were either unremarkable or relatively benign." (Tr. 20.) For example, in October 2011, Plaintiff reported to the emergency room with complaints of pain in the right knee for two weeks. (Tr. 18, 256.)  The emergency report notes "no history of similar complaints" and on examination he had

18

normal range of motion, normal motor strength and tone and a "fairly normal gait." (Tr. 18, 256-57.) This report falls almost exactly one year after Dr. Gennaoui's examination and only three months prior to Dr. Alviar's examination. The Providence hospital report makes no mention of the need for a walking aid. The report states:

> Examination of the right knee, the patient had an effusion. There was no warmth or redness. Popliteal fossa was intact and no swelling. Knee joint was stable. Right leg calf was soft. Homans sign is negative. There was no edema and gait was fairly normal. (Tr. 257.)

At the same visit, right knee x-rays were negative. (Tr. 257-28.) Four views of the right knee revealed "no acute fracture, dislocation or osseous abnormality. There is no soft tissue abnormality." (Tr. 258.) Plaintiff's discharge diagnosis was "chronic right knee effusion, etiology unknown." (Tr. 257.)  Similarly, a December 8, 2011 discharge summary from Sinai-Grace Hospital, where Plaintiff underwent a normal diagnostic coronary angiogram, notes that Plaintiff "was able to ambulate without difficulty." (Tr. 18, 261.)

While the ALJ's discounting of two seemingly consistent consultative examinations and a state agency medical consultant is unusual at best, in this instance the ALJ cannot be accused of "playing doctor" in making his findings. There is an almost complete dichotomy between the reports and findings when Plaintiff sought treatment, compared to the two consultative examinations. The chronology of the examinations makes even more stark the inconsistencies which the ALJ carefully pointed out. While at the hospital stay from December 7-8, 2011, Plaintiff was "able to ambulate without difficulty." Less than one month later, at the January 4, 2012 consultative examination, he was described as "limping with the use of a cane." (Tr. 264.) Plaintiff relayed a history of problems with his right knee having started two years prior and, as at the 2010 consultative examination, he reported the necessity to use a cane for support and pain. (Tr. 229,

263.) At the 2010 examination Plaintiff was described as "bearly (sic) able to walk without a cane. He almost fell." (Tr. 229.)

The ALJ also relied on a discrepancy between the activities of daily living which Plaintiff reported in his functional activities report and those he reported to the consultative examiners. (Tr. 20.) At the October 21, 2010 consultative examination, it was noted in the "history of present illness" section of the report that Plaintiff cannot walk more than one block, he uses a cane for support and that his activity "is almost none at all due to the disability of his joint pain." (Tr. 229.) In an August 2010 Function Report, Plaintiff had reported that he was "able to walk 4 short blocks" and is able to walk about "4 blocks" before needing to stop and rest. (Tr. 195.)  On the same report, where it asked Plaintiff to identify any of a list of aids and assistive devices, including a cane, no items were selected, despite the fact that Plaintiff answered other questions on the same page. (Tr. 196.)  On the same report, Plaintiff reported that he was "unable to stand for more than a couple of hours" and was able to vacuum the living room and put dishes into the dishwasher. (Tr. 190, 192.)   The ALJ also pointed out with respect to leg and foot pain, that the record does not show a history of treatment or medical diagnoses of gout, other than Plaintiff's report on examination. Nonetheless, the ALJ considered it a severe impairment noting that the consultative examiners reported it. (Tr. 18.)

The ALJ gave extensive reasons based on specific evidence for the reduced weight he gave to the consultative examiners opinions, as well as his RFC findings, which did not include the necessity of a cane or a sit/stand option. These findings were based on substantial evidence in the record. The ALJ's RFC is supported by substantial evidence in the record. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds

20

credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ's findings at step four, that Plaintiff can perform his past relevant work as performed, are, however, not supported by substantial evidence. On remand, the ALJ should determine the physical demands of Plaintiff's past work as a dispatcher as performed and reevaluate whether he can perform this past work either as he performed it or as it is generally performed. The ALJ should resolve and explain any inconsistencies related to this determination. If the ALJ uses a vocational expert in his determination, he must inquire whether the VE's testimony was consistent with the DOT, inquire as to the basis for any inconsistencies and resolve any inconsistencies in his decision pursuant to Social Security Ruling 00-4p.

**3.     Whether the ALJ Erred When He Relied On Findings In The Disability Determination Reports**

The record contains two Disability Determination Explanations ("DDEs"), both dated November 17, 2010. (Tr. 65-72, 73-80.) They are substantively the same. There is one each for Plaintiff's DIB claim and SSI claim. Plaintiff argues that the ALJ erred in selectively relying on only portions of the DDE. (Doc. 11 at 11.) Specifically, the ALJ gave "significant weight" to the DDE State Agency Medical Consultant as being consistent with the diagnostic and clinical findings available in the record. (Tr. 20.) Plaintiff argues that the ALJ then failed to address the portion of the DDE which classified Plaintiff's past work as a dispatcher as "light" in exertion and not sedentary. (Doc. 11 at 11.) As set forth above, the ALJ erred in failing to explain the inconsistency between Plaintiff's past work as performed and described and the RFC limiting Plaintiff to sedentary work. This error, however, did not arise from the ALJ's consideration of the DDE information.

As Defendant properly argues, Social Security Ruling 96-6p requires administrative law judges to consider state agency medical and psychological consultants' "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists." SSR 96-6p. Although the ALJ's statements in his decision referencing the DDE may not be eloquent, the ALJ notes that he is reviewing the state agency medical consultant's opinions in the DDE. (Tr. 20.) The ALJ gave significant weight to the November 17, 2010 opinion of medical consultant Dr. Ahmed. (Tr. 20, 69-70, 77-78.)

The remaining portions, including the vocational findings at the end of the DDEs, are completed by the disability adjudicator/examiner otherwise identified as a single decision maker or "SDM," who is not an expert and whose findings do not constitute vocational or other expert evidence on which the ALJ may rely. The ALJ did not err in giving weight to only the portions of the DDEs that contain the medical consultant's opinion. As the single decision maker identified in the DDE, the classification of the dispatcher position as "light" was based on Plaintiff's description, while noting that the DOT describes the position as "sedentary" in exertion. (Tr. 75.) The ALJ did not err in treating the medical consultant's opinion as evidence and yet failing to treat the single decision maker's findings as evidence.

### G.    Conclusion

The ALJ's decision to deny benefits at step four was not supported by substantial evidence. Defendant's Motion for Summary Judgment (Doc. 14) should be denied, that of Plaintiff (Doc. 11) granted and the decision reversed and remanded for further action as set forth herein.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);  *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER

Dated: August 5, 2014                                       United States Magistrate Judge